**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**LORENZO M. PLEDGER**,

      Plaintiff,

**v.**                                    **Civil Action No. 2:16-CV-83
(Judge Bailey)**

**UNITED STATES OF AMERICA;
LORETTA LYNCH; CHARLES
SAMUELS, JR.; J.F. CARAWAY;
MR. WEAVER; MRS. GROVE;
E. ANDERSON; JOSHUA HALL;
ALICIA WILSON; ANDREA HALL; and
ST. JOSEPH'S HOSPITAL,**

      Defendants.

## ORDER ADOPTING IN PART AND DECLINING TO ADOPT IN PART REPORT AND RECOMMENDATION

### I. Introduction

On this day, the above-styled matter came before this Court for consideration of the

Report and Recommendation of United States Magistrate Judge Michael J. Aloi [Doc. 151].

By Local Rule, this action was referred to Magistrate Judge Aloi for submission of a report

and a recommendation ("R&R"). Magistrate Judge Aloi filed his R&R on August 16, 2018.

Therein, the magistrate judge recommends: (1) plaintiff's medical negligence claims be

dismissed; (2) plaintiff's intentional infliction of emotional distress ("IIED") claim in plaintiff's

FCTA complaint survive the motion to dismiss; (3) defendant' St. Joseph Hospital's motion

to dismiss be granted; (4) the Federal Defendants' motion to dismiss be granted in part as

to defendants Lynch, Samuels, Caraway, Weaver, Grove and Joshua Hall; (5) the Federal

1

Defendants' motion to dismiss be denied in part as to defendants Anderson, Wilson, and Andrea Hall; (6) Plaintiff's **Bivens** complaint be dismissed with prejudice against defendants Lynch, Samuels, Caraway, Weaver, Grove, and Joshua Hall; and (7) plaintiff's Request for Judicial Notice be denied as moot. Both plaintiff and the United States and individual defendants Anderson, Wilson, and Andrea Hall timely filed objections to the R&R [Docs.153, 156]. This matter is now ripe for review.

## II. Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. **Thomas v. Arn**, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo* review and the right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); **Snyder v. Ridenour**, 889 F.2d 1363, 1366 (4th Cir. 1989); **United States v. Schronce**, 727 F.2d 91, 94 (4th Cir. 1984). Here, objections to Magistrate Judge Aloi's R&R were due within fourteen (14) days of receipt, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. Defendants United States and individual defendants Anderson, Wilson, and Andrea Hall timely filed their Objections [Doc. 153] on August 29, 2018. Plaintiff Pledger timely filed his Objections [Doc. 156] on September 4, 2018. Accordingly, this Court will conduct a *de novo* review of the portions of the magistrate judge's R&R to which the parties object. The remainder of the R&R will be reviewed for clear error.

2

**A. Motion to Dismiss**

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. *Advanced Health-Care Services, Inc., v. Radford Community Hosp.*, 910 F.2d 139, 143 (4th Cir. 1990). Moreover, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Conley v. Gibson*, 355 U.S. 41, 45 - 46 (1957).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B. Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be

resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323-25; *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

### III. Factual and Procedural History

The facts of the case are detailed in depth in the R&R, so, in the efforts of efficiency, this Court will not reiterate all of the facts. This Court will only recap some of the most relevant facts.

Plaintiff is a federal prisoner. He had been diagnosed with Crohn's disease before arriving in federal prison, but was not on any Crohn's medicine when he got to prison. April 16, 2014, starts a long list of at least 36 doctor appointments, consultations and examinations. The specific facts and results of these visits are described in the R&R. In short, plaintiff repeatedly went to sick call and told medical personnel that he was in a lot of pain. X-rays were done that showed nothing. Plaintiff was prescribed a number of different medications and many times told to drink water and to follow up at sick call if his condition worsened. Plaintiff never seemed to get better. At one point, he was scheduled

4

to have a colonoscopy, but plaintiff refused to go through with it. A colonoscopy was eventually done, however.

On September 2, 2015, plaintiff was still in a lot of pain and sent an e-mail to Health Services and asked whether they thought if it could be his appendix and not his colon. The next day, Health Services responded that he had a pending ultrasound and during that they would also check his appendix.

On September 8, 2015, plaintiff "fell out" and said his abdominal pain was so unbearable he could not stand. Plaintiff was hospitalized and shortly thereafter had surgery to remove part of his colon and his appendix.

On March 22, 2016, plaintiff filed an Administrative Tort Claim claiming the Bureau of Prisons ("BOP") staff was, among other claims, deliberately indifferent to his medical needs and negligent in the treatment of his Crohn's disease. The BOP investigated and denied the claims and advised plaintiff he had six months to file suit in United States District Court.

Plaintiff filed both a FTCA Complaint and a ***Bivens*** Action. The Bivens and FTCA Complaint consist of the same claims. Plaintiff claimed (1) deliberate indifference by BOP employees in their failure to timely and correctly diagnose and treat his condition; (2) medical negligence; and (3) intentional infliction of emotional distress. The United States moved to dismiss (or in the alternative, moved for summary judgment) all claims. The responses and motions are more detailed in the R&R. The relevant portions of the motions and responses for this Order are included in the applicable sections and subsections.

## IV. **Discussion**

The United States and individual defendants Wilson, Anderson, and Andrea Hall (the "remaining defendants") made three objections to the R&R: (1) the liberal construing and less stringent pleading standards for *pro se* litigants must be tempered by the concept that the United States is generally immune from being sued; (2) the IIED claim should be dismissed because it was not properly presented to the appropriate federal agency, and even if it was, plaintiff cannot establish a claim for IIED; and (3) plaintiff has not established that Wilson, Anderson, and Andrea Hall were deliberately indifferent to his medical needs [Doc. 153]. On the other hand, the plaintiff made four objections: (1) the West Virginia Medical Professional Liability Act ("MPLA") is unconstitutional as applied to plaintiff and the plaintiff's medical negligence claims should not be dismissed; (2) plaintiff states he is confused as to the R&R's recommendation regarding the IIED claim; (3) St. Joseph's Hospital ("SJH") should not be dismissed from this litigation because plaintiff argues SJH should count as a federal actor; and (4) defendants Samuels, Caraway, and Weaver should not be dismissed from this litigation because plaintiff e-mailed FCI Gilmer Health Services, including Samuels and Caraway, and each employee of the Bureau of Prisons has a duty to ensure inmates receive adequate medical care [Doc. 156].

## A. Pro Se Leniency

In their objections, the United States and the remaining defendants state that even though *pro se* litigants' pleadings are to be construed liberally and held to a less stringent standard, that this liberal construction shall be tempered. They further cite and outline case law that courts are not to advocate or construct legal arguments for *pro se* parties. The

defendants do not clearly argue that the magistrate judge advocated or constructed legal arguments for the *pro se* plaintiff. Since there is no actual argument by the United States and the remaining defendants, this Court does not find it necessary to rule on the objection.

## B. Intentional Infliction of Emotional Distress

To prevail on an intentional infliction of emotional distress claim, also known as the tort of outrage, plaintiffs must prove:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Labs., Inc.*, 202 W.Va. 369, 375, 504 S.E.2d 419, 425 (1998). The WVSCA has held that liability for IIED "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Tanner v. Rite Aid of W. Virginia, Inc.*, 194 W.Va. 643, 651, 461 S.E.2d 149, 157 (1995). Thus, the burden on the plaintiff to prevail on an IIED claim is extremely high. *See Pegg v. Herrnberger*, 845 F.3d 112, 122 (4th Cir. 2017) ("It is difficult to overstate the high burden of proof required to sustain a tort claim for intentional infliction of emotional distress/outrage."); *Keyes v. Keyes*, 182 W.Va. 802, 805, 392 S.E.2d 693, 696 (1990) ("This is a high standard indeed."); *Wolford v. Mountain Top Hunting Club, Inc.*, No. 14-0963, 2015 WL 7628704, at *5 (W.Va. Nov. 20, 2015) ("[A] claim of outrage requires actions exceed all bounds of human decency."). Mere negligence cannot

constitute outrageous conduct.  *See* **Courtney v. Courtney**, 186 W.Va. 597, 602, 413 S.E.2d 418, 423 (1991) ("Thus, conduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct.").

Determining "whether the outrageous conduct alleged by the plaintiff is legally sufficient to support a claim for intentional infliction of emotions distress is a question of law for the Court." **Wolford**, 2015 WL 7628704, at *5 (citing **Courtney v. Courtney**, 186 W.Va. 597, 413 S.E.2d 418 (1991)).   A trial court's duty is "to first determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to constitute the intentional or reckless infliction of emotional distress." **Travis**, 202 W.Va. at 378, 504 S.E.2d at 428.

The R&R recommends that the IIED claims be maintained and not dismissed because the magistrate judge believes the conduct of the defendants meets the burden for IIED.  The plaintiff "objects" to the R&R's recommendation and states he is "confused by the magistrate's report," but the R&R on this point was in plaintiff's favor so this Court construes this as no objection.   The Government objects to this recommendation and argues that even the R&R recognizes that the FCI Gilmer staff provided plaintiff with medical care, diagnostic testing, medication, and referrals to other doctors.  This Court agrees with the Government.

The R&R states that the prison staff "*did* provide Plaintiff with *some* medical care when he repeatedly presented at Health Services . . . and that they provided *some* diagnostic testing and medication, and did refer Plaintiff for an endoscopy/colonoscopy." [Doc. 151, p. 53].  The R&R focuses on an outside provider's advice to "re-check the

patient as needed" within four weeks.  Plaintiff returned to Health Services for weight loss, inability to eat solid food, and increased pain and discomfort.  The R&R states that plaintiff was given "empty promises and useless advice, such as 'drink more water', 'rest,' 'come back if it gets worse.'"  [*Id.* at 54].  It is not a court's duty to second-guess medical advice, treatment, or diagnosis.  The plaintiff saw doctors over thirty times, was scheduled for a colonoscopy which he initially declined to go through with, was prescribed a number of medicines, and advised on diet.  In the end, it may be argued that the medical staff involved in this case were mistaken in a lot of ways that resulted in the plaintiff crashing to the floor because of pain and having part of his colon surgically removed.  However, a mistake in diagnosis or treatment is not enough to satisfy the high burden for IIED.  The number of doctor visits, prescriptions, and examinations regarding plaintiff, combined with an extremely high burden for IIED, makes clear that the claim for IIED should be dismissed.  The actions cannot reasonably be regarded as so extreme and outrageous to constitute IIED.

The Court does not find it necessary to discuss whether or not plaintiff adequately presented an IIED claim in his administrative claim because this Court finds even if it was adequately presented, the claim still does not meet the high burden of IIED.

Accordingly, the Government's objection is **SUSTAINED**.

## C.  Deliberate Indifference Claims Against Anderson, Wilson, and Andrea Hall

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.  "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones[.]"  ***Farmer v. Brennan***, 511 U.S. 825, 832 (1994)

(internal citation omitted). "Prisoners are entitled to reasonable medical care." ***Russell v. Sheffer***, 528 F.2d 318, 318 (4th Cir. 1975). The Eighth Amendment does not declare that "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." ***Estelle v. Gamble***, 429 U.S. 97, 105 (1976). The Supreme Court has articulated two requirements to determine whether there has been a violation of the Eighth Amendment. *See **Farmer***, 511 U.S. at 834. There is an objective prong and a subjective prong that both must be satisfied for plaintiffs to meet their burden. *See **id.***

First, to satisfy the objective prong for medical treatment cases, a claimant must prove that "he had a 'sufficiently serious' medical need to require medical treatment." ***Brice v. Virginia Beach Corr. Ctr.***, 58 F.3d 101, 104 (4th Cir. 1995). Plaintiff Pledger's Crohn's disease and his falling in pain and subsequent surgery resulting in removal of part of his colon and appendix establish this first element.

Second, to satisfy the subjective prong, a claimant must prove that a prison medical staff member, guard, or other official who was "subjectively aware of the need and of its seriousness, nevertheless acted with 'deliberate indifference' to it by declining to secure available medical attention." ***Id.; see also Estelle***, 429 U.S. at 104–05 (stating that a cause of action can be established by deliberate indiffernce of both prison doctors or prison guards).

Whether the remaining defendants' actions constitute "deliberate indifference" is the critical issue. To prove deliberate indifference, plaintiffs must show "the official knows of and disregards an excessive risk to inmate health or safety." ***Farmer***, 511 U.S. at 837.

"The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *see also Johnson v. Quinones*, 145 F.3d 164, 168–69 (4th Cir. 1998) (since the plaintiff only produced evidence of pituitary tumor symptoms but no evidence of the doctors' "subjective knowledge of the pituitary tumor" itself, the claim could not survive summary judgment because plaintiff never "bridged the gap" between the symptoms and the tumor). Deliberate indifference is "more than mere negligence" but also "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. The Fourth Circuit has held deliberate indifference should be akin to the standard of criminal recklessness. *See, e.g.*, *Brice*, 58 F.3d at 105 ("[D]eliberate indifference in this context lies somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law."); *Makdessi v. Fields*, 716 F. App'x 148, 153 (4th Cir. 2017). Deliberate indifference is a very high standard for plaintiffs to meet their burden. *See Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (stating the burden to prove deliberate indifference as an "exacting standard"); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) ("The subjective component therefore sets a particularly high bar to recovery.").

In the medical treatment context, the Supreme Court has held medical negligence or medical malpractice does not necessarily constitute deliberate indifference. *See Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *see also Quinones*, 145 F.3d at 168 ("A missed diagnosis, however,

does not automatically translate into deliberate indifference."). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Alone, disagreements between an inmate and prison medical staff regarding medical treatment or diagnosis does not constitute an Eighth Amendment violation. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) ("Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged."). Additionally, just because prison officials give a prisoner some type of treatment does not mean the prison officials automatically avoid a Constitutional violation. *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013) ("But just because Appellees have provided De'lonta with some treatment consistent with the GID Standards of Care, it does not follow that they have necessarily provided her with constitutionally adequate treatment."). However, the Fourth Circuit has long held that the courts are not to second-guess or input its own views about medical treatment in the place of the medical professionals' decisions. *See Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) ("[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment."); *Russell*, 528 F.2d at 318. The Court has further stated that the courts "will not intervene upon allegations of mere negligence, mistake or difference of opinion." *Bowring*, 551 F.2d at 48.

In *Estelle*, a seminal Supreme Court case, the Court did not find deliberate indifference where the prisoner was seen by medical staff 17 times for a lower back injury. *Estelle*, 429 U.S. at 107. The Court further stated that "the question whether an X-ray or

additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment" and that a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Id.*

The Fourth Circuit, in many cases, has also ruled on deliberate indifference regarding medical diagnosis and treatment of prisoners. In *Wright v. Collins*, the Fourth Circuit affirmed summary judgment for a doctor and emphasized the fact that the doctor and prison medical staff saw the prisoner "on numerous occasions" even though the prisoner was ordered back to work before his injuries healed. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

In *Scinto v. Stansberry*, a 2016 Fourth Circuit case, the Court held that there was sufficient evidence for a deliberate indifference claim to survive summary judgment because an inmate alleged that he was repeatedly denied his prescribed insulin which affected the inmate's eyesight and kidney. *Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016), *cert. denied sub nom. Phillip v. Scinto*, 138 S. Ct. 447 (2017). In a very recent unpublished case, the Fourth Circuit reversed the dismissal of a deliberate indifference claim by a prisoner with hemorrhoids and rectal bleeding. *Perry v. Meade*, 728 F. App'x 180, 182 (4th Cir. 2018) (per curiam) (unpublished). In *Perry*, the Court noted that the prisoner alleged he repeatedly informed prison medical professionals that their treatment plan was ineffective, his bleeding and pain had worsened, and that the medical personnel prescribed his courses of treatment "without conducting medical examinations." *Id.* Subsequently, the prisoner's condition worsened to the point he had to be hospitalized for five days and receive a blood transfusion. *Id.*

In the instant case, this Court agrees with the Government that plaintiff's claims cannot survive summary judgment. The facts that continuous medical care occurred is undisputed. What is disputed between plaintiff and the Government is whether the care was adequate. The R&R details at least 36 different visits to doctors, nurses and other medical personnel, many more than the 17 in *Estelle* and 36 visits would constitute "numerous occasions" as in *Wright*. The instant case is very similar to *Perry*, but in *Perry* the Fourth Circuit noted that the courses of treatment were provided "without conducting medical examinations." As mentioned before, there were a great number of examinations conducted. Additionally, *Perry* was a motion to dismiss, in which the plaintiff only needed to state a plausible claim. This case is also distinct from *Stansberry* because in *Stansberry* the medical professionals knew the prisoner had diabetes and was prescribed insulin, but they admitted to refusing to give the prisoner his necessary insulin injections. Here, there was no actual known illness or ailment other than Crohn's disease, and the medical professionals were trying numerous different treatments in order to alleviate plaintiff's problems. None of these worked in the end and plaintiff had to have part of his colon removed. However, malpractice or negligence in diagnosis or treatment of medical issues is not enough to satisfy deliberate indifference. Precedent demands more.

The number of doctor visits and examinations is probably enough to show that the prison medical staff as a whole was not deliberately indifferent, but this case involves more than just that. Plaintiff was scheduled to have a colonoscopy and refused. He also refused certain medicine, dietary suggestions, and other testing that was offered. Additionally, he signed a refusal form that advised him that his illness and pain could get worse.

The R&R recommends that the deliberate indifference claims survive summary judgment against Dr. Anderson, D.O., Alicia Wilson, P.A., and Andrea Hall, RN. The R&R again makes the argument that the medical staff, including these three, should have taken a different course of treatment. In this section, the R&R states that the staff "should have prioritized the gastroenterology consult and CT scan, and done more than offer water, rest, and 'consider' the abdominal ultrasound." [Doc. 151, p. 69]. However sound this medical argument is, it is not sound legally because it is not the Court's duty to second-guess the choices of medical professionals.

Discussing the three individual defendants specifically, their actions did not meet the high burden of deliberate indifference. In regards to defendant Anderson, the R&R focuses on Dr. Anderson not restarting plaintiff on Mesalamine four weeks after plaintiff's surgery as instructed by the surgeon or following up with the surgeon as directed. [*Id.* at 68]. However, the R&R also states that during this four-week period, plaintiff was seen by doctors and another doctor had noted "cont[sic] hold Mesalamine." [*Id.* at 20] This shows that even though the doctor visits may not have been with the same doctor who performed his surgery, he had been receiving medical attention. And since another doctor said to hold Mesalamine, plaintiff's argument that he did not get restarted on Mesalamine, does not constitute deliberate indifference. In fact, while plaintiff had been off Mesalamine for over two months, he even reported that "he had not noticed any worsening of his symptoms." [*Id.* at 23].

For defendant Alicia Wilson, P.A., the claims for deliberate indifference are based on her co-signing of medical notes after medical visits and consultations with plaintiff. First, plaintiff claims defendants should have prioritized diagnostic testing because on August,

15

14, 2015, the knot in his abdomen was noted by a nurse and Dr. Anderson signed it and defendant PA Wilson reviewed it. [*Id.* at 45]. Second, on August 26 and 28, 2015, PA Wilson also signed notes for a visit where plaintiff reported a knot in his abdomen. [*Id.*]. Finally, on August 17, 2015, plaintiff was seen by a nurse and the note from that visit was co-signed by PA Wilson. The nurse documented that his vital signs were stable, that he had no acute distress, and that she gave him advice about following up at sick call and returning immediately if his condition worsened. [*Id.* at 73]. The R&R finds fault with PA Wilson because of the nurse's documentation. The R&R implies that the nurse was wrong in her documentation because plaintiff's pulse and temperature were both obviously elevated, plaintiff had reported he had been in pain for months and it was getting worse, and plaintiff reported the medication had been helping but his prescription expired and the prescription was not renewed. These semantic issues with medical terms are not any court's business. Additionally, because a plaintiff's medication was not renewed even though the plaintiff said it worked does not constitute deliberate indifference. Signing medical notes about a patient's reported "mass" does not begin to prove that defendant Wilson knew of and consciously disregarded the risk that his colon or appendix would need to be surgically removed. *See Farmer*, 511 U.S. at 837; *Quinones*, 145 F.3d at 168–69. The support given for Wilson's deliberate indifference is the mere signing of medical notes that could at best be contradictory to the patient's reporting. This may constitute a difference of opinion, but it does not meet the high burden of deliberate indifference because he was being seen by medical professionals.

In regards to defendant Andrea Hall, RN, the R&R states that "to a lesser degree" Andrea Hall was aware of plaintiff's pain and symptoms but withheld or delayed treatment

anyway. [Doc. 151, p. 76]. The only support for this finding is that Andrea Hall "impliedly suggests Pledger was exaggerating his pain." [*Id.* at 74]. Even if Andrea Hall overtly suggested plaintiff was exaggerating his pain, that does not constitute the high burden of deliberate indifference. It is within a nurse's duties to make notes if he or she believes a patient is exaggerating.

In conclusion, the record and R&R make clear that plaintiff received frequent and continuous medical care. Plaintiff may have had part of his colon removed because of mistreatment and/or misdiagnosis of his ailments, but unfortunately for plaintiff, Supreme Court and Fourth Circuit precedent are clear that medical negligence does not satisfy the high deliberate indifference standard. Accordingly, the Government's objection is **SUSTAINED** and this Court grants summary judgment for defendants Anderson, Wilson, and Andrea Hall on the deliberate indifference claims.

### D. MPLA Certification and Medical Negligence Claims

The plaintiff objects to the R&R's recommendation that his medical negligence claims be dismissed because of his failure to file the required screening certificate of merit before filing his medical negligence claim, pursuant to the MPLA. In pertinent part, the MPLA reads:

> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
>
> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to

whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of Rule 15 of the Rules of Civil Procedure.

W.Va. Code § 55-7B-6.

Plaintiff has not complied with the MPLA and argues that it is unconstitutional as applied to him because federal inmates do not have access to state legal research material and therefore federal inmates would have no knowledge of the MPLA requirements. However, plaintiff's case is not that of an inmate with no knowledge of the MPLA requirements. On December 27, 2017, plaintiff filed a Motion for Extension of Time [Doc. 3] in which he stated he needed additional time to file the certificate. On January 5, 2018, this Court granted plaintiff's Motion for an Extension of Time in Which to File a Screening Certificate of Merit [Doc. 44]. The Court gave the plaintiff 60 days to file the certificate. The plaintiff has not filed the certificate to this day.

Plaintiff's argument is not that 60 days is not enough time to file a certificate, but argues that he had no knowledge of the requirement. As evidenced by plaintiff's own motion and the Court's Order, plaintiff has had knowledge of the certificate requirement for more than nine months.

Plaintiff argues, in the alternative, that if this Court dismisses the medical negligence claims that the Court should dismiss them without prejudice as opposed to the R&R's

recommendation of dismissing them with prejudice. The plaintiff argues that the Supreme Court of Appeals of West Virginia ("WVSCA") has held that dismissal is "too harsh of a remedy for failure to comply with the MPLA where the Plaintiff did not know it applied." [Doc. 156, p. 4]. The cases plaintiff cites, *Gray v. Mena*, 218 W.Va. 564, 625 S.E.2d 326 (2005), and *Blankenship v. Ethicon, Inc.*, 221 W.Va. 700, 656 S.E.2d 451 (2007), do indeed mention the harshness of a dismissal of charges for failure to comply with the certificate of merit requirement. However, the cases' holdings of "too harsh" are not in regards to whether the plaintiff knew it applied or not, but to whether the claim was categorized as one under the MPLA umbrella in the first place. *See Gray*, 218 W.Va. at 570, 625 S.E.2d at 332 ("[T]he plaintiff filed the civil action and did not characterize the action as one falling within the realm of the Medical Professional Liability Act. Thus, under the particular circumstances of this case, dismissal appears to be a disproportionately harsh sanction."); *Blankenship*, 221 W.Va. at 703, 656 S.E.2d at 454 (finding that the asserted claims were in fact to be covered by the MPLA so the WVSCA remanded the case "to afford plaintiffs the opportunity to amend their complaint and otherwise comply with the MPLA"). The plaintiffs, in the cases cited, filed claims and did not mention the MPLA and did not believe the claims were covered by the MPLA. The courts then held the claims were covered by the MPLA even though they were not initially categorized as MPLA medical negligence claims. Therefore, they reasoned it would be too harsh to dismiss the cases with prejudice because when they filed them, the court had not yet determined that their claims were covered by the MPLA. Here, the case is much different. The plaintiff had

notice that his claims were covered by the MPLA and his claims for medical negligence are without question under the purview of the MPLA.

Additionally, courts have found that 30 days is enough time to cure the failing of the certificate requirement. *See Westmoreland v. Vaidya*, 222 W.Va. 205, 212–13, 664 S.E.2d 90, 97–98 (2008) (remanding the case "to afford Dr. Westmoreland a reasonable time of thirty days to secure a certificate of merit."); *Russell v. United States*, No. 2:15CV22, 2015 WL 13064922, at *4 (N.D.W.Va. Sept. 3, 2015), *vacated and remanded on other grounds*, 670 F. App'x 116 (4th Cir. 2016) ("[T]his Court finds it is in the interest of justice to allow the plaintiff to cure this deficiency by permitting him thirty (30) days to comply with the requirements of § 55–7B–6.").

In the instant case, the plaintiff was granted 60 days, double what the WVSCA has found reasonable to file a certificate of merit. Accordingly, this Court **OVERRULES** plaintiff's objections to this point. The medical negligence claim and the FTCA medical negligence claim are **DISMISSED WITH PREJUDICE**.

## E. St. Joseph's Hospital Dismissed as Improper Defendant under *Bivens*

The plaintiff objects to the R&R's recommendation that SJH be dismissed from the *Bivens* claims. Plaintiff argues that SJH "is a proper defendant, as it was acting in the place of a federal actor." [Doc. 156, p. 5].

The Supreme Court and Fourth Circuit have both clearly stated that prisoners must bring a *Bivens* action against individual defendants and not employers or federal agencies. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994) ("An extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself."); *Randall v. United*

*States*, 95 F.3d 339, 345 (4th Cir. 1996) ("Any remedy under **Bivens** is against federal officials individually, not the federal government."); **Corr. Servs. Corp. v. Malesko**, 534 U.S. 61, 71 (2001) (holding that there was no **Bivens** right of action against private entities that engaged in alleged constitutional deprivations while acting under color of federal law).  In **Malesko**, the Supreme Court stated:

> If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a **Bivens** claim against the offending individual officer, subject to the defense of qualified immunity. *The prisoner may not bring a **Bivens** claim against the officer's employer, the United States, or the BOP.* With respect to the alleged constitutional deprivation, his only remedy lies against the individual[.]

**Corr. Servs. Corp. v. Malesko**, 534 U.S. 61, 72 (2001) (emphasis added).  In the instant case, the plaintiff is attempting to bring a claim against a hospital, not an individual officer. Therefore, plaintiff's objection to his **Bivens** claim against SJH being dismissed is **OVERRULED**.

### F.  Dismissal of Defendants Lynch, Samuels, Caraway, and Weaver

Plaintiff objects to the R&R's dismissal of defendants Lynch, Samuels, Caraway, and Weaver.  The magistrate judge recommends dismissing the **Bivens** claims against these defendants because they were not personally involved in any of the alleged constitutional violations.  Plaintiff argues that he had sent e-mails to FCI Gilmer Health Services and that he mailed letters to Samuels and Caraway "bringing to their attention the deliberate indifference to his serious medical needs."  [Doc. 156, p. 6].

Liability in a **Bivens** case is "personal, based upon each defendant's own constitutional violations."  **Trulock v. Freeh**, 275 F.3d 391, 402 (4th Cir. 2001).  Vicarious liability or *respondeat superior* is not available for a **Bivens** claim, "each Government

official, his or her title notwithstanding, is only liable for his or her own misconduct." ***Ashcroft v. Iqbal***, 556 U.S. 662, 677 (2009).

Plaintiff argues that defendants Samuels and Caraway were personally involved enough to maintain a ***Bivens*** claim. He supports this argument by stating every BOP employee has the "duty to ensure inmates are provided with adequate medical care." [Doc. 156, p. 8]. He adds that by "remaining silent about plaintiff's complaint and failure to have the matter properly investigate[d]," defendants Samuels and Caraway "gave tacit or silent authorization to defendants' illegal acts." [*Id.*]. However, these actions, in actions, do not constitute a level of personal involvement in alleged constitutional violations as precedent requires. Plaintiff was sent to doctors at least thirty times. There was nothing more for Samuels and Caraway to do, and they are entitled to rely on judgment of medical professionals when it involves medical treatment and diagnosis. Therefore, the actions or inaction of defendants Samuels and Caraway do not meet the high burden of deliberate indifference as defined by the Supreme Court.

Defendants Lynch and Weaver were not mentioned in plaintiff's objections. Accordingly, plaintiff's objection is **OVERRULED**. Defendants Lynch, Samuels, Caraway, and Weaver are **DISMISSED WITH PREJUDICE**.

## V. Conclusion

Upon careful review of the above, the plaintiff's Objections to the magistrate judge's R&R **[Doc. 151 ]** are **OVERRULED**. Defendants' Objections to the magistrate judge's R&R **[Doc. 153]** are **SUSTAINED**. Accordingly, this Court **ADOPTS IN PART AND DECLINES IN PART** the magistrate judge's Report and Recommendation **[Doc. 151]**.

United States' Motion to Dismiss **[Doc. 36]** is **GRANTED**.  Defendant St. Joseph's Hospital's first Motion to Dismiss **[Doc. 53]** is **DENIED AS MOOT** and Defendant St. Joseph's Hospital's second Motion to Dismiss **[Doc. 141]** is **GRANTED**.  The Federal Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment **[Doc. 103]** is **GRANTED** as to all Defendants.  Plaintiff's Request for Judicial Notice **[Doc. 136]** is **DENIED AS MOOT**.  Plaintiff's Motion for Appointment of Counsel **[Doc. 157]** is **DENIED AS MOOT**.

The clerk is directed to enter judgment in favor of the defendants.  Finally, this case is hereby **ORDERED STRICKEN** from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record and to mail a copy to the *pro se* plaintiff.

**DATED:** September 27, 2018.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE